## Fry v. Barrett

*Julian W. Barnard* and *Garrett A. Brownback*, for plaintiff.

*High, Swartz, Flynn & Roberts*, for defendant.

DANNEHOWER, J., November 26, 1945.—This case is presently before the court on defendant's affidavit of defense raising questions of law, having previously been considered on defendant's rule for a more specific statement of claim. A brief summary of the facts appearing in the statement of claim was given in our former opinion, filed June 20, 1945, and is repeated here, in the interest of clarity, as follows:

"On March 22, 1943, the plaintiff purchased a restaurant business in the Borough of Norristown from one Joseph Furst. Furst had held a "Storekeepers' Burglary and Robbery Policy" of the Fidelity and Casualty Company of New York, which policy had been sold to him by the defendant, who is a qualified insurance agent or broker. At the time of the sale of the business, defendant urged plaintiff to purchase the existing policy from Furst, representing to plaintiff that the policy would give him 'full protection against theft and burglary'. Plaintiff relied on this assurance, and purchased the policy, paying to Furst a proportion of the annual premium, and it was endorsed to him as owner. The policy was labeled 'Storekeepers' Burglary and Robbery Policy' and nothing on the exterior indicated there were any limitations or restrictions in coverage in the policy provisions, but there were printed on the outside of the policy the words 'PLEASE READ YOUR POLICY'.

"Defendant did or said nothing to inform plaintiff of any restrictions or qualifications of 'full protection against theft and burglary'.

"Shortly before the expiration of the policy described on January 6, 1944, defendant solicited plaintiff for a renewal of the same, to which plaintiff assented.

"About May 25, 1944, plaintiff discovered that over a period of something over a month, an employee had stolen sums of money from the cash drawer aggregating $153.91, and upon notifying defendant of the loss,

was assured by the latter that he, the plaintiff, was covered by the policy. However, the insurance company later disclaimed any liability, by virtue of the terms of the policy, for such a loss.

"About July 12, 1944, an unknown person broke into the restaurant and stole $248.50 from the cash register. Plaintiff again notified defendant of the loss, and was advised that he was covered by the policy, but later the company disclaimed liability.

"Plaintiff alleges that defendant failed to furnish the kind of policy he had agreed to, and by his suit in assumpsit seeks to recover from defendant the sums he has lost by reason of the two thefts."

In addition, it should be noted that the statement of claim also alleges that:

"Plaintiff possesses no special knowledge in insurance matters and insurance language, nor is he thoroughly conversant with legal differentiations as between robbery from the person and burglary at night from a cash register in a store as distinguished from burglary at night from an occupied home, and hence plaintiff was thoroughly unable to comprehend the nature and true meaning of much of the language appearing in said recited policy, whereupon plaintiff was compelled to and did altogether rely in purchasing and acquiring said recited policy of insurance, upon the special knowledge pertaining to insurance matters which defendant impliedly represented himself as possessing, and did expressly rely upon the verbal assurances and warranties given to him by defendant as to the protection said recited policy would afford him, without which assurances and warranties plaintiff would not have purchased said policy."

Defendant assigns six reasons in support of his affidavit of defense raising questions of law, which may be briefly stated as follows:

1. Plaintiff, while reciting a special express warranty or contract, and bringing his suit in assumpsit,

claims damages by reason of defendant's negligence, which could only support a tort action.

2. Plaintiff apparently seeks to recover on an express special warranty or contract, as well as for negligence, which constitutes a misjoinder of causes of action.

3. The statement fails to allege consideration for the contract relied on.

4. The nonliability of the insurer under the policy must be judicially determined, before plaintiff can recover in this action.

5. Any verbal warranty or contract merged in the written policy contract subsequently furnished to plaintiff.

6. The alleged agreement sued on would constitute an insurance contract between the parties, and such contract would be void under the Pennsylvania Insurance Company Law of 1921.

For convenience, these matters will be considered in the above order.

The first and second reasons raise substantially the same question, and will be considered together. The question is whether, having averred a contract, plaintiff may show negligence on the part of the defendant in an assumpsit suit, and whether, in averring a "negligent breach of contract", plaintiff is guilty of a misjoinder of causes of action. It is certainly clear that two causes of action, one sounding in tort and the other in contract, should not be tried in the same action. That principle is set forth in a case cited by defendant: Coughenour v. Stewart & Co., 44 Pa. Superior Ct. 7 (1910). But in that case, the declaration was in trespass, and upon the trial plaintiff proved acts of trespass as alleged, and went on to prove further acts as breach of a contract between the parties. This the court very properly held he was not entitled to do. That is not the situation here. There is only one set of facts stated with fair completeness. These facts

may give plaintiff an opportunity to choose one of two forms of remedy, but they certainly constitute but one cause of action, and therefore there is no misjoinder.

Whether plaintiff has selected the proper form of remedy is the really substantial question in this case, and involves a consideration of the possible relationships between an insurance agent or broker and an applicant for insurance, as well as a consideration of the principles concerning appropriate remedies for breach of contract. The leading textwriters on insurance law give us considerable light on this phase of the case. In 16 Appleman, Insurance Law and Practice, sec. 8841, p. 300, it is said:

"An insurance broker is the agent of the insured in negotiating for a policy, and owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting insurance. While such broker is not obligated to assume the duty of procuring a policy, without consideration for his promise, he must exercise ordinary care in the performance of such duty when assumed, the promise to take the policy being a sufficient consideration. . . .

"If a broker or agent of the insured neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective, through the agent's fault, he is liable to his principal for any loss he may have sustained thereby. If the agent or broker fails to act with the proper and customary skill and care generally used by those in a like business, such neglect or breach of duty will render him liable in damages, not exceeding the amount of insurance he was employed to effect. Connecticut has pointed out that such principal may sue either for breach of contract or in tort for a breach of duty.

"It is generally considered that if the neglect or breach of duty of such broker results in loss to his principal, the broker is liable to the same extent as

the insurer would have been liable had the insurance been properly effected, and must pay the resulting loss."

To the same effect are 1 Cooley's Briefs on Insurance (2nd ed., 1927) 452, 2 Couch, Cyclopedia of Insurance Law, sec. 481, Walker v. Black, 216 Pa. 395 (1907). See also Ursini v. Goldman, 118 Conn. 554, 173 A. 789 (1934), which has many features suggestive of the situation in the case at bar. See also Annotation, 18 A. L. R. 1214.

As for the form of action, we are not convinced that the averments of the statement of claim amount to an allegation that defendant tortiously breached the contract. Even if the acts, or failure to act, of defendant do constitute a tort, however, it is well settled that there are many situations, including the present one, in which plaintiff may waive the tort and bring his suit in assumpsit: In 1 Standard Pa. Practice, sec. 105, p. 381, it is said:

". . . On the other hand, there are a number of situations in which the remedies for both a tort and a breach of a contractual obligations are available and in which the injured person, therefore, has a right of election. Trespass is a concurrent remedy with assumpsit for many breaches of contracts which involve more than the mere payment of money, whether the breach consisted of nonfeasance, misfeasance, or malfeasance. Thus, where a duty arises under an implied undertaking to do an act requiring skill and fidelity, the breach of such duty may be either the subject of assumpsit on the implied promise or of an action for tort. . . ."

Therefore, the first and second questions must be decided in plaintiff's favor.

There is no merit in defendant's third contention, that the statement fails to allege a consideration for the contract sued on. As pointed out above, the promise to take the policy is consideration for the

obligation assumed by the agent. Further, the payment of the premium would constitute sufficient consideration to support the agent's duty, which he has assumed, to exercise reasonable care, skill and diligence.

The fourth reason assigned by defendant as a bar to recovery is that the nonliability of the insurer must have first been judicially determined. He cites no authority for this proposition, and we have been unable to find any. The statement does allege that the insurer informed plaintiff that he was not covered for the particular losses, and that he has not been paid therefor, despite the filing of formal proofs of loss. Of course, if defendant can demonstrate that the policy does cover the losses, that may be a matter of defense, but in ruling upon the affidavit before us, we must take it as a fact that the company is not liable on the policy.

We cannot agree with defendant's fifth reason, that any verbal warranty merged in the written policy. This argument would carry weight if the suit were against the company issuing the policy, but not in a suit against an agent for procuring a defective policy: See 16 Appleman, Insurance Law and Practice, sec. 8843, p. 306.

Nor can we see any merit in the sixth and last reason assigned, namely, that the agreement sued on would constitute an insurance contract and as such would be void under the Insurance Company Law of May 17, 1921, P. L. 682. Counsel has not suggested any particular provision in said act of which the present agreement would be violative, but we take it for granted, for present purposes, that defendant is not qualified under the law to issue individual insurance contracts, and that any attempt to do so would be illegal. However, the agreement relied on is not one of insurance, but a mere promise to obtain for plaintiff a policy that would protect plaintiff against certain forms of loss.

It is for a breach of that promise, a failure to carry out the duty he assumed, that this suit is brought.

We have carefully considered this case in all its aspects, and conclude that it should not be terminated at this stage by a summary judgment.

And now, November 26, 1945, for the reasons given in the foregoing opinion, the questions of law raised in defendant's affidavit of defense are decided in favor of plaintiff, and defendant is allowed 15 days from this date within which to file an affidavit of defense on the merits.